UNITED STATES v. AGLER.

(Circuit Court, D. Indiana. July 12, 1894.)

1. INJUNCTION AGAINST COMBINATIONS IN RESTRAINT OF INTERSTATE COMMERCE
   —JURISDICTION.
   Under Act July 2, 1890, declaring illegal and punishing combinations in
   restraint of commerce among the states, and conferring jurisdiction on
   United States circuit courts to prevent and restrain violations of the act,
   the court has jurisdiction to issue an injunction to restrain such violation.

2. SAME—TECHNICAL DEFECTS IN BILL.
   That a bill for such injunction contains no prayer for process, this being
   a mere technical defect, although it renders the bill demurrable, does not
   affect the jurisdiction of the court or render the injunction issued thereon
   void.

3. SAME—DEFENDANTS NOT NAMED IN BILL, NOR SERVED WITH SUBPOENA.
   An injunction for such purpose becomes binding, as against one not
   named in the bill, and not served with subpoena, when the injunction
   order is served on him as one of the unknown defendants referred to in
   the bill.

4. SAME—PROCEEDINGS TO PUNISH VIOLATION.
   An information to punish violation of such an injunction order which
   fails to allege that the order was a lawful one, in the language of the
   statute, or that the person charged, not named in the order, was one of
   the unknown parties referred to therein, or that, either by his words or
   his acts, he was engaged in aiding the common object with other members
   of the alleged combination, lacks the necessary certainty.

This was an information against Hiram Agler for contempt of
court in disobeying an injunction. Defendant moved to quash
the information.

F. B. Burke and Edwin Corr, for the United States.
McCullough & Spaan, for defendant.

BAKER, District Judge (orally). It is well settled that a restrain-
ing order or injunction issued by a judicial tribunal without jurisdic-
tion of the subject-matter is coram non judice and void. That
is affirmed in all the books, and affirmed in the judgments of the
supreme court of the United States that the counsel for the defend-
ant has called the attention of the court to. Now, the question
whether or not the circuit court of the United States had jurisdic-
tion requires an examination of the statute, for the purpose of
determining whether or not there is any law that authorized the
court judicially to take cognizance of the sort of action that is
set forth in the petition or bill.

Prior to the 2d day of July, 1890, it is entirely clear that the
United States, as a municipal corporation, had no power, either
by petition or bill, to go into the courts of equity of the United
States, and invoke the aid of those courts, by their restraining
power, to prevent interference with the carriage of the mails or with
the carriage of interstate commerce. Prior to that time the sole
remedy was on the criminal side of the court. The sole method
in which the United States, as a government, could prosecute vio-
lators of the law who interfered with the carriage of mails or inter-

fered with the instrumentalities used in the conduct of interstate commerce, was by indictment or information on the criminal side of the court; but the growth of railways in this country, and the combinations of laborers employed on those roads for the purpose of enforcing, by strikes or otherwise, what they conceived to be their just rights, had led to a condition of things that, in the judgment of congress, made it imperative that the courts of the United States,—in other words, that the nation itself,—for the purpose of protecting the mails of the country, and for the purpose of protecting the passenger and freight traffic on interstate railroads, should have the right to invoke not only the criminal jurisdiction of the court by fines, or by sending to the penitentiary those who were guilty of violations of those laws, but that the government should also be clothed with the power—or rather the courts of the United States should be clothed with the power—of laying their strong hands on these men, and not waiting until crimes had been committed, but restraining, not for the purpose of preventing people from doing what is lawful, or to prevent their getting better wages, but for the purpose of saying to everybody that civil liberty cannot exist where combinations of men undertake by force and violence to arrest the peaceable and orderly conduct of business among the states. With that view of national duty, on July 2, 1890, congress enacted a law that enlarged the jurisdiction of the federal courts, and authorized them to apply the restraining power of the law for the purpose of checking and arresting all lawless interference with the peaceable and orderly carriage of mails, and with the peaceable and orderly conduct of railroad business between the states. This law was intended to lay its strong hand, not only upon the capitalists or monopolists who, by combinations, undertook to interfere with the business and commerce of the country, and subject them to punishment, but, on the other hand, it also undertook to say to the laboring men of the country that "you shall not enforce your rights, however just they may be, by violence and by lawlessness."

Civil order cannot exist where men undertake by strong hand to enforce rights, whatever their rights may be. In civilized and organized society there is only one avenue that is alike open to the rich and the poor—that is, the avenue of the courts—for the purpose of settling disputes between men. No man has a right, even though he has been wronged, even though he may have been oppressed, to take the law into his own hands, and, by force and terrorism or threats, redress his wrongs. It means a condition of things that would be absolutely intolerable in civilized society, and it was in order that the peaceable and quiet and orderly processes of the law might be applied to men who are thus engaged, whether they were monopolists, on the one side, or laboring men, on the other, that the law was enacted for the purpose of arresting lawlessness, composing these disturbances, and bringing about that orderly and peaceful condition of affairs that is essential to the life and happiness of the community.

Now, there is no doubt, in my judgment, that this act of July 2, 1890, did clothe the circuit court of the United States with this new and enlarged power. That, however, does not answer the entire contention of the counsel for the defense. He insists that the affidavit and information filed in this case does not reach and bind the defendant as charged, because, as he alleges, the bill does not contain a prayer for process; and he reads from an authority which is undoubtedly sound that a bill in equity without containing a prayer for process which shall embody the names of the defendants against whom process is prayed would be demurrable. That is undoubtedly the law. That, however, does not settle the question that is before the court. The question is whether or not if an injunction is issued by a court which has power to issue the injunction upon a bill, provided the bill is not demurrable, is the injunction void because, on investigation, the court believes that a demurrer might have been sustained to the bill if it had been interposed? In other words, does a mere defect that could be reached by demurrer, in a bill of which the court has jurisdiction,— over which the court has been given jurisdiction by the express terms of the statute,—is the injunction order a nullity, and can it be treated with contempt because the bill is defective, so that a demurrer might be sustained to it? On that proposition the court entertains no doubt. There is not an authority, in the judgment of the court, that can be found in the books—certainly the court is aware of none—in which it has ever been held that a man who was enjoined and had violated the injunction could escape punishment by alleging that, at the time the writ of injunction was issued, the bill was demurrable.

There is no doubt but what a number of men are named expressly by name. Eugene V. Debs, Howard, and some men here in this state are named by name. If, in the prayer for process, their names had been repeated, or if it had been simply stated in the prayer for process that the complainant, the United States, prays process against the parties above named, the bill would have been technically sufficient. Now, then, I assume that process of subpoena was issued against these men by order of Judge Woods, without their having been named in the prayer for process. It is a mere technical defect. It is one that does not, in the language of the supreme court, go to the jurisdiction of the court. The jurisdiction of the court depends upon the law of the land. Nor do I think it is necessary in this sort of cases for the government to file what is technically known as a "bill in equity" on the chancery side of this court as in a civil case. The right at all to file this sort of a proceeding is a new statutory right, and courts cannot—they would be derelict in the discharge of their duty if they did—disregard the purpose and object of the enactment of the law. I do not undertake to sit in judgment on either capitalists or laboring men. I have, as a magistrate, nothing to do with that. I am simply bound as a judge to take notice that a condition of things had grown up in this country of strikes, of interruption of mails, and interruption

and interferences with interstate commerce; that it provoked comment, and had created feeling; and, in order that labor troubles should be settled without interfering with the commerce and the happiness of millions of innocent people, it was determined that the national government should clothe its courts with power on the civil side to stop these things without waiting until crimes had been committed, and then send men to the penitentiary for the crimes so committed. That is the reason of it. It was intended to be a preventive remedy. That was the sole purpose of it. So far as this phase of it is concerned, it is true there are other sections that authorize men who do these things to be punished by fine of not more than $5,000, and imprisonment for a year in state prison; but, so far as the civil side of it is concerned, it was intended to meet an emergency and a public exigency. It could not sue until the mails had been interfered with, or until the commerce of the country had been lawlessly stopped, but it was not intended, in my judgment, in order to invoke the judgment and jurisdiction of the court that all of the old nicety of pleading and practice of the English chancery courts should apply. The courts would be powerless if that were the case, to accomplish the beneficent purpose of the law, because it is a beneficent purpose. It is a praiseworthy purpose, in the midst of tumult and excitement, when lawlessness seizes upon the arteries of the commerce of the nation, for the courts of the land, in their peaceable and orderly way, to lay their hands on these men, and bid them cease. It is a lawful thing,—a commendable thing. The law gives them that power. So much, then, on the question of jurisdiction.

I think that in this proceeding the court (Judge Woods, as judge of the circuit court) had jurisdiction to issue this writ. Now, this party defendant is not named, and to say now that process of injunction may not be issued, to be binding upon men who are not named, or shall not be binding until they are actually served with subpoena, as they are on the civil side, on the equity side, of the court, it would defeat the purpose of the law. It is not within the language of the statute itself. I think the injunction as against unknown defendants is valid and binding when the injunction order is served upon them, although they are not at the time parties to the suit. Indeed, I think an injunction that is issued against one man enjoining or restraining him, and all that give aid and comfort to him, or all that aid and abet him, is valid against everybody that aids or gives countenance to the man to whom it is addressed. I do not entertain any doubt about that.

Now, then, the court having decided that it thinks the injunction was properly issued, and that, if it was actually served on this man as one of the unknown defendants, the injunction would be good, that brings us to the question of the technical sufficiency of the affidavit, because in this sort of proceeding, in my judgment, it is not essential that an information shall be filed, although there is no harm in doing that. The essential thing is the filing of a statement or charge that shall show clearly and distinctly that the

restraining order has been served on the defendant, or, if it has not been served on him, that he had notice or knowledge of its contents.

Now, in this case, the information, I think, lacks considerable of having the certainty and precision that is essential. It is not alleged that this man was one of the unknown parties that are referred to in the injunction. It is not alleged that the restraining order was a lawful one, in the language of the statute. It does not allege,—and that is the most serious thing, to my mind,—that either by his words or his acts he was engaged in aiding the common object with other members of the American Railway Union. If what this man did was not done to give aid or comfort or encouragement to the object of arresting the mails, if it was an independent crime the man was committing, if he wanted to commit arson or robbery, without having any connection with these men that were engaged in the interruption of commerce, then he would not be within the terms of the restraining order, nor within the law, which has been read here,—the law of July 2, 1890. Now, it is not charged, although it has been assumed all the way through,—I suppose the proof adduced would go to show that,—that he was connected with the railway union, and that his acts were acts that were calculated in their nature to give aid and comfort to the strike that has been carried on. If those facts were proved, why they would be sufficient to satisfy the court that his mind was acting in combination with the minds of Debs and others, or that they were engaged in the common purpose, and hence that they were in the conspiracy that is mentioned in the statute, provided the things that they were trying to do would naturally result in delaying or interrupting the mails, or in delaying or interrupting the carriage of passengers and freight from one state to another. I think that in these particulars the affidavit is insufficient. I think the charge is sufficient, so far as showing that the court has jurisdiction to issue the writ, when it is shown by an affidavit that this man was engaged in the combination or conspiracy with other railroad men in aiding and assisting to arrest the mails and interstate commerce. I think the affidavit would show a cause of action against him, and then it would depend upon the proof whether or not the offense was made out.