[No. 9414.   Department One.   April 11, 1911.]

THE STATE OF WASHINGTON, *on the Relation of W. H. Bogle et al., Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY *et al., Respondents*.[1]

STIPULATIONS—CONSTRUCTION—DISMISSAL OF ACTION—ATTORNEY'S FEES. A stipulation for the dismissal of an action, upon conveyance of part of the property in dispute to trustees, who were to pay to the plaintiff's attorneys, on account of their contingent fees, "whatever attorney's fees are allowed or established in their favor for the party of the second part [plaintiff] in such suit," does not contemplate that the fees are to be established in the pending case, but means that the fees are to be paid when determined in an action brought for that purpose; as it is distinctly provided that the pending suit shall be dismissed.

COURTS—JURISDICTION—CONSENT OF PARTIES — RECORD — STIPULATION TO DISMISS ACTION—ATTORNEY'S FEES—PROHIBITION. Where the parties to an action stipulated that it be dismissed upon the conveyance to trustees of part of the property in dispute, the trustees to pay plaintiff's attorneys, on their contingent fees, whatever sum might be allowed or determined in their favor, the court has no jurisdiction in the pending case to determine the amount of the fees without service of process or further pleadings, by reason of the fact that the trustees joined in the stipulation and were present or represented at the hearings, where they did not appear and consent thereto, but objected to the jurisdiction of the court; and prohibition lies to prevent proceedings in the action to determine the amount and enforce payment of the attorney's fees.

COURTS—JURISDICTION — DETERMINATION — CONCLUSIVENESS. The decision of a court that it has jurisdiction to determine the contingent fees of plaintiff's attorneys is not conclusive, where it was

[1]Reported in 114 Pac. 905.

based on statements made to the court and a stipulation for dismissal of the action, and the record shows that the court had no jurisdiction over the parties objecting thereto.

Application filed in the supreme court March 2, 1911, for a writ of prohibition to the superior court for King county, Tallman, J., to prevent further proceeding with a cause and to vacate a decree. Granted.

*Bogle, Merritt & Bogle*, for relators.
*James Hart* and *Jay C. Allen*, for respondents.

Gose, J.—In September, 1910, one Mary Jeffs, an Indian woman of the full blood, commenced an action against Henry Sicade and Alice Sicade, his wife, in the superior court of King county, for the purpose of canceling and setting aside certain deeds which she had theretofore executed to Henry Sicade. It was alleged in the complaint that the deeds were obtained by means of fraud and without consideration. The defendants' answer joined issue upon the question of fraud, and affirmatively alleged that they had made valuable improvements upon the property. The reply put the affirmative matter in issue. The case was thereafter set for trial. Thereafter, and on February 14, 1911, the plaintiff, the defendants, and the relators entered into an agreement for the settlement of the action. In this agreement Henry Sicade and his wife were named as parties of the first part, Mary Jeffs as party of the second part, and the relators, as trustees of "the Jeffs Orphans Home," the parties of the third part. So far as pertinent to the present inquiry, the agreement provides that Sicade and wife shall convey to the relators as such trustees three-fourths of the value of the property in controversy in that action. It also contains the following clause:

. "The suit now pending in behalf of the party of the second part against the parties of the first part in the superior court of King county, state of Washington, shall be dismissed without costs to either party. The attorneys for the plaintiff

having an agreement with the party of the second part for an attorney's fee equal to one-half of the value of the property which they might recover in this action, it is agreed that, whatever attorney's fees are allowed or established in their favor for the party of the second part in such suit, shall be paid by the said parties of the third part as such trustees."

The Sicades thereupon executed deeds to the relators, as trustees, conformably to the agreement, and the deeds were placed in escrow for delivery upon the dismissal of the action. At the time of the execution of the agreement of settlement, Jay C. Allen and James Hart were present as attorneys for the plaintiff, Mary Jeffs, and approved it. After several adjournments and on February 23, 1911, the suit of Jeffs against Sicade was called for trial before the court, the respondent Judge Tallman presiding without a jury. The record shows that, at the hearing had on that date, the only question considered or determined by the court was the amount of attorney's fees to be awarded to the plaintiff's attorneys. This hearing was had without other or different pleadings, and without the service of summons, notice, or other process. The plaintiff's attorneys claimed the right to appear for both the plaintiff and themselves. Mr. Merritt, one of the relator's attorneys in this proceeding, asserted the right to appear for the plaintiff Jeffs and contest the amount of the attorney's fees, and also repeatedly protested against the jurisdiction of the court over the relators. Mr. Bogle, one of the relators, and one of their present counsel, united in the latter protest. Counsel for the defendants Sicade appeared and asked that the case be dismissed, conformably to their construction of the quoted clause of the agreement. The court, however, proceeded to hear evidence as to the value of the property set apart to the trustees, and entered a judgment that Jay C. Allen and James Hart are entitled to one-half such property, and in case the relators as trustees do not, on or before the 6th day of March, 1911, pay to them the sum of $43,125, that they be awarded an undivided one-half in value of all the

property set apart to the trustees, and appointed commissioners to partition it between them and the trustees equally. The decree further provided that, in default of payment, upon the report of the commissioners and its approval, the action be dismissed. The court denied the right of Mr. Merritt to appear for the plaintiff, Jeffs, and litigate the amount of the attorney's fees, on the ground that he had not filed any paper in the cause; denied the motion of counsel for Sicade for a dismissal of the action; and disregarded the protest of both Mr. Merritt and Mr. Bogle that he was proceeding without jurisdiction against the relators. The relators declined to pay the attorney's fee awarded by the court. At this stage of the proceedings, we granted the relators an alternative writ of prohibition, which they now seek to have made peremptory.

It is alleged in the answer to the affidavit for the alternative writ that the court acquired jurisdiction of all the parties "upon statements which had been made to the court, and which were made to the court at the time and upon the written agreement between the parties." It is apparent from the facts stated that the court did not acquire jurisdiction of the relators from any act upon their part upon the day of the hearing. On the contrary, as we have seen, while not appearing, two of their present counsel and one of the relators were present in court asserting a want of jurisdiction over the relators. The relator Bogle came into court at the hearing, in response to the request of the court. Nor do we think jurisdiction of the relators was obtained at any of the several adjournments. If counsel for the relators made an oral appearance before the day of the hearing, they could withdraw it at the hearing. *Carnegie Steel Co. v. Cambria Iron Co.*, 185 U. S. 403. The only issue before the court in the way of formal pleadings was that between the plaintiff Jeffs and the defendants Sicade. That issue was entirely foreign to the question of the compensation of counsel. Jurisdiction is the power to hear and determine.

"Jurisdiction of the subject-matter is the power to hear and

determine cases of the general class to which the proceedings in question belong." 11 Cyc. 669.

Jurisdiction of the person must be acquired by the service of the applicable statutory process, or by the voluntary appearance of the party whose rights are sought to be adjudicated. We do not question the power of a court of general jurisdiction to determine a matter within its jurisdiction without formal pleadings, where the parties in interest appear upon an agreed statement of facts, or appear and submit their evidence and request the court to adjudicate their rights.

It follows that, if the court had jurisdiction of the relators, it was acquired by the clause in the tripartite agreement which we have quoted. A reference to that clause discloses that there was a distinct agreement to dismiss the Jeffs-Sicade suit. The language relied upon by the plaintiff's attorneys and the respondent in support of jurisdiction is that, "it is agreed that, whatever attorney's fees are allowed or established in their favor for the party of the second part [Mary Jeffs] in such suit, shall be paid by the said parties of the third part as such trustees." This language does not mean that the attorney's fees are to be established in the Jeffs suit. Clearly, however, it does mean that the trustees will pay the attorney's fees allowed them for their services to their client Mary Jeffs in her suit against the Sicades, when determined in an action brought for that purpose. Any other view would not only be a strained and unnatural construction of the language employed, but would nullify the provision for the dismissal of the case. It seems that, if the parties had intended that the clause should be treated as a stipulation that the attorney's fees should be determined in the then pending case, they would have provided that the *Jeffs* case should be continued for that purpose. The clause in the agreement did not confer jurisdiction over the relators. *Kalb-Glibert Lumber Co. v. Cram,* 57 Wash. 550, 107 Pac. 381; *Id.,* 60 Wash. 664, 111 Pac. 1050.

The respondents have cited *Meisenheimer v. Meisenheimer,*

55 Wash. 32, 104 Pac. 159, 133 Am. St. 1005; *Groves v. Richmond*, 56 Iowa 69, 8 N. W. 752; *Bedford v. Ruby*, 17 Neb. 97, 22 N. W. 76; *Hutts v. Martin*, 134 Ind. 587, 33 N. E. 676; *Randolph County v. Ralls*, 18 Ill. 29, and *Indiana B. & W. R. Co. v. Bird*, 116 Ind. 217, 18 N. E. 837, 9 Am. St. 842. In the *Meisenheimer* case we held that a visiting superior judge had jurisdiction to hear and determine a motion to vacate a decree in a county other than the one where the decree had been entered, where the parties stipulated that he should so hear it, and appeared at the hearing. In the *Groves* case the question determined was that the transfer of a certiorari proceeding from the district court to the circuit court upon stipulation conferred jurisdiction upon the latter court, in a case where the law gives exclusive jurisdiction to the circuit court in that class of cases. In reaching that conclusion the court said:

"But, where the court has general jurisdiction over the subject-matter, the parties may waive the ordinary process and voluntarily submit the question to the adjudication of the court."

And that:

"The mere fact that the petition and return were filed in the district court before they were filed in the circuit court certainly cannot affect their legal operation."

In the *Bedford* case it was held that the court had jurisdiction to determine a case upon the stipulation of the parties upon an agreed statement of facts. In the *Randolph County* case it was held that, where the court has jurisdiction of the subject-matter, full appearance of the parties without objection confers upon the court jurisdiction of the person, and it may then adjudicate. In *Hutts v. Martin, supra*, it is said:

"It is a general principle of the law, that courts have no power to adjudicate matters not involved in the issues in causes pending before them. Litigants do not place themselves for all purposes under the control of the court, and it is only the interests involved in the particular suit that can be af-

fected by the adjudication. Over other matters, the court has no jurisdiction, and any decree or judgment relating thereto is void. . . . An exception to this rule exists, however, where the parties, by agreement, in open court, permit matters to be adjudicated not involved in the issues in the cause. In such cases the judgment rests upon the agreement of the parties, and not upon the pleadings in the cause."

In the *Bird* case the same principle is thus stated:

"A judgment by agreement will bind those by whose agreement it is entered, notwithstanding the pleadings would not, in a contested case, authorize such a judgment."

These views we think are elementary, and they proceed from the principle that, subject to exceptions not necessary to state here, a party may waive any right or privilege which he has.

The respondents argue that, if there is a question as to whether it was agreed to leave the matter to the court in said action, and the court so found, the finding is conclusive except upon appeal. The vice of this argument is that the answer has set forth the facts relied upon to give the court jurisdiction, and it is expressly alleged in the answer that the judgment of the court is "based upon statements which had been made to the court, and which were made to the court at the time and upon the written agreement between the parties." As we have seen, the record shows that the court proceeded without jurisdiction of the relators.

The court had no jurisdiction of the relators, and they are entitled to a peremptory writ of prohibition prohibiting the respondent from further proceeding with the cause, and directing a vacation of the decree. *State ex rel. Arthur v. Superior Court,* 58 Wash. 97, 107 Pac. 876.

The writ will be made peremptory.

Dunbar, C. J., Fullerton, Mount, and Parker, JJ., concur.