[No. 43322. En Banc. April 24, 1975.]

MEAD SCHOOL DISTRICT NO. 354, *Respondent*, v. MEAD EDUCATION ASSOCIATION *et al*, *Appellants*.

*Mark E. Vovos, William J. Powell,* and *Bryan P. Harnetiaux,* for appellants.

*Donald C. Brockett, Prosecuting Attorney, Jerry Neal, Chief Civil Deputy,* and *Garald A. Gesinger, Deputy,* for respondent.

UTTER, J.—This is an appeal by the Mead Education Association and several of its officers from an order adjudging them in contempt for defying the Spokane County Superior Court's temporary injunction of a teachers' strike. In *Mead School Dist. v. Mead Educ. Ass'n,* 85 Wn.2d 140, 530 P.2d 302 (1975), we reversed the trial court's grant of that injunction. In this case we must determine whether the contempt citations survive the invalidating of the injunction and, if so, whether they were proper despite several other alleged irregularities cited by appellants. We hold the impropriety of the injunction does not vitiate these contempt convictions, but that the judgments against the individual defendants were impermissibly based on evidence obtained in violation of their privileges against self-incrimination. We therefore reverse the convictions of the association officers, but affirm that of the association itself.

On April 29, 1974, the Mead School District filed a lawsuit seeking to enjoin a strike by its employees, members of the Mead Education Association. Its complaint was met by a motion to dismiss on the grounds that the suit was authorized at a school board meeting held in violation of the Open Public Meetings Act of 1971. The trial court denied the motion; in so doing, it erred. *Mead School Dist. v. Mead Educ. Ass'n, supra.*[1] Evidence was then taken and argument

---

[1] The events and proceedings leading up to the trial court's denial of the dismissal motion are described in somewhat more detail in *Mead School Dist. v. Mead Educ. Ass'n,* 85 Wn.2d 140, 530 P.2d 302 (1975).

heard regarding the need for and propriety of a temporary restraining order, which the court finally issued. The next day this order was supplanted by a substantially similar temporary injunction against the strike.

It was this injunction which we held erroneously issued in *Mead School Dist. v. Mead Educ. Ass'n, supra,* and it was for violating this injunction that appellants were held in contempt. The threshold question presented by this case, then, is whether the fact that the injunction was later adjudged to be invalid excuses the appellants' allegedly contemptuous conduct. Both parties rather facilely assume it does. We do not agree.

■ The traditional measure of the vitality of a contempt conviction for violation of a court order when the order itself is found to have been improper is the scope of the jurisdiction of the issuing court. "[W]here the court has jurisdiction of the parties and of the subject matter of the suit and the legal authority to make the order, a party refusing to obey it, however erroneously made, is liable for contempt." *Dike v. Dike,* 75 Wn.2d 1, 8, 448 P.2d 490 (1968), quoting *Robertson v. Commonwealth,* 181 Va. 520, 536, 25 S.E.2d 352, 146 A.L.R. 966 (1943); *Deskins v. Waldt,* 81 Wn.2d 1, 5, 499 P.2d 206 (1972). "The test of the jurisdiction of a court is whether or not it had power to enter upon the inquiry, not whether its conclusion in the course of it was right or wrong." *State v. Olsen,* 54 Wn.2d 272, 274, 340 P.2d 171 (1959), quoting 12 A.L.R.2d 1059, 1066 (1950).

In most circumstances the application of this principle is relatively straightforward, and the distinction between errors of law and arrogations of power fairly easy to draw. Where it has not been courts have compounded it and fashioned the concept of "jurisdiction to determine jurisdiction." *United States v. United Mine Workers,* 330 U.S. 258, 91 L. Ed. 884, 67 S. Ct. 677 (1947); *United States v. Shipp,* 203 U.S. 563, 51 L. Ed. 319, 27 S. Ct. 165 (1906). These cases hold that a court's order must be obeyed if it had the power to decide whether it was authorized to issue it, even if it is later held that it was not so authorized. They are based on

the fundamental premise that when a question of authority is raised, someone must decide it, and the initial decision is going to be made by the forum court itself.

Were we to follow blindly the literal language of either of these "jurisdiction" tests, appellants' contempt convictions would fall with the order on which they were based. The trial court's power to issue the injunction against the teachers' strike, and its power to decide whether it had that power, was predicated on there being a case before it. We have found there was not: the plaintiff failed to properly invoke the jurisdiction of the superior court. *Mead School Dist. v. Mead Educ. Ass'n, supra.* Technically, the court lacked jurisdiction over the parties, and virtually all the authorities in this area assume that such a defect will deprive a court of the authority to issue lawful orders and enforce them through contempt. *See, e.g., United States v. United Mine Workers, supra* at 294; *State v. Olsen, supra* at 274; *State v. Lew,* 25 Wn.2d 854, 869-70, 172 P.2d 289 (1946); *State ex rel. Bogle v. Superior Court,* 63 Wash. 96, 114 P. 905 (1911); Z. Chafee, Jr., *Some Problems of Equity,* 301, 379 (1950); Cox, *The Void Order and the Duty to Obey,* 16 U. Chi. L. Rev. 86, 110 (1948); Annot., 12 A.L.R.2d 1059, 1066 (1950).

Very few cases, however, have actually involved a flaw in "jurisdiction" similar to the one here. Where contempt convictions have been reversed on such grounds, there has been a much more serious and obvious usurpation of power by the offended court. For example, jurisdiction has been found absent where the case underlying the violated order was not a kind the court was competent to hear (*In re Ayers,* 123 U.S. 443, 31 L. Ed. 216, 8 S. Ct. 164 (1887); *State ex rel. Hillman v. Gordon,* 105 Wash. 326, 177 P. 773 (1919); *State ex rel. News Publishing Co. v. Milligan,* 3 Wash. 144, 28 P. 369 (1891)), where the order itself was not one the court was authorized to issue (*State ex rel. Snohomish County v. Sperry,* 79 Wn.2d 69, 483 P.2d 608 (1971), *cert. denied,* 404 U.S. 939 (1971); *Pearce v. Pearce,* 37 Wn.2d 918, 226 P.2d 895 (1951), and where the person

held in contempt was not properly brought within reach of the court's process (*State ex rel. Evans v. Winder*, 14 Wash. 114, 44 P. 125 (1896); *State ex rel. Boardman v. Ball*, 5 Wash. 387, 31 P. 975 (1892)).

These decisions reflect the fundamental role the contempt power plays in the work of an equity court, and illustrate the essential errors which consequently must exist before that power can be nullified.

> The power of a court, created by the constitution, to punish for contempt for disobedience of its mandates, is inherent. The power comes into being upon the very creation of such a court and remains with it as long as the court exists. Without such power, the court could ill exercise any other power, for it would then be nothing more than a mere advisory body.

*Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 423, 63 P.2d 397 (1936); *Keller v. Keller*, 52 Wn.2d 84, 88, 323 P.2d 231 (1958). The "jurisdiction" test measures whether a court, in issuing an order or holding in contempt those who defy it, was performing the sort of function for which judicial power was vested in it. If, but only if, it was not, its process is not entitled to the respect due that of a lawful judicial body. "Only when a court is so obviously traveling outside its orbit as to be merely usurping judicial forms and facilities, may [its order] be disobeyed and treated as though it were a letter to a newspaper." *United States v. United Mine Workers, supra* at 309-10 (Frankfurter, J. concurring).

 Talismanic invocation of the phrase "lack of jurisdiction," therefore, is not enough to vitiate a contempt conviction. It must appear that the document which forbade the acts the contemnors committed was only a writing by a judge, not the lawful process of a court. A defect in jurisdiction will ordinarily render it such, but is not necessarily conclusive. "[T]here are many kinds of jurisdiction—of the person, over the place, in equity, as a federal court. It cannot now be broadly asserted that a judgment is always a nullity if jurisdiction of some sort or other is wanting."

*Carter v. United States*, 135 F.2d 858, 861 (5th Cir. 1943).
The only flaw in the trial court's jurisdiction cited by the appellants is the lack of proper authorization for the lawsuit brought before it by the Mead School District.[2] The district had the power to bring this sort of suit, and the trial court to hear it, but the district's lawyers had not legally been empowered to represent it in this case by any binding resolution of its board of directors. We cannot see how this should in any way diminish the respect due the order of the superior court. The defect was in the plaintiff, not the court.[3]

Use of the contempt power to enforce court orders has been upheld where plaintiffs obtained them through irregular procedures (*Critelli v. Tidrick*, 244 Iowa 462, 56 N.W.2d 159 (1952)), filed a defective complaint (*United States v. Agler*, 62 F. 824 (C.C.D. Ind. 1894); *Ex parte Joutsen*, 154 Cal. 540, 98 P. 391 (1908); *O'Brien v. People ex rel. Kellogg Switchboard & Supply Co.*, 216 Ill. 354, 75 N.E. 108 (1905)), or failed to post a required bond (*State ex rel. Brown v. McFaul*, 27 Wash. 286, 67 P. 564 (1902)). When corporations have brought suits which they lack the legal ability to maintain, their incapacity has been found not to deprive the court of jurisdiction or subject its orders to collateral attack in contempt proceedings. *Franklin Union 4 v. People*, 220 Ill. 355, 365, 77 N.E. 176 (1906); cf.

---

[2] In their petition for certiorari reviewing the injunction, appellants made several arguments regarding the propriety of the injunction under traditional principles of equity and prevailing labor law. Because of our disposition of the Open Public Meetings Act of 1971 question, we did not reach them. *Mead School Dist. v. Mead Educ. Ass'n, supra.* Appellants' brief in this case incorporates the Open Public Meetings Act of 1971 arguments, but not these others. In addition, their reply brief in this case questions the power of an equity court to order specific performance of a personal service contract. This issue was not raised in the opening briefs, however, and consequently will not be considered here. ROA I-41(1).

[3] The case would, therefore, be different had the contempt orders been designed to benefit the plaintiff rather than vindicate the power of the court. *See United States v. United Mine Workers*, 330 U.S. 258, 91 L. Ed. 884, 67 S. Ct. 677 (1947); *Stow v. Marinelli*, 352 Mass. 738, 744-45, 227 N.E.2d 708 (1967).

*Johnson & Wight, Inc. v. Rickard,* 115 Vt. 118, 52 A.2d 786 (1947).[4] All these cases recognize that flaws which do not go to the heart of the judicial power are insufficient to justify the flaunting of an otherwise lawful order. They implicitly narrow the casual dictum that "jurisdiction of the parties and of the subject matter" is required, to the better-reasoned rule that only an absence of jurisdiction to issue the type of order, to address the subject matter, or to bind the defendant will vitiate contempt. We follow this rule, and hold that the acts of the appellants here were not excused by the fact that the plaintiff was not properly in court.

Several other grounds for reversing the trial court have been urged upon us. First, appellants argue that the contempt convictions were impermissibly based on testimony extracted from them in violation of their privilege against self-incrimination. This contention stems from the conduct of the hearing held on the morning of May 3, 1974, to which the appellants were called to show cause why they should not be held in contempt. At the opening of these proceedings, appellants' counsel informed the court that, if called, his clients would invoke their Fifth Amendment privilege against any interrogation regarding their compliance with its temporary injunction. Despite this claim, the judge proceeded to call each of the then defendants and instruct them to answer questions put to them by counsel and from the bench. After individually asserting their privileges,[5] all of them complied. Their testimony provided

---

[4]We have implicitly ruled that the inability of a corporation to bring suit is not jurisdictional, by holding that an objection on that ground can be waived by silence. *Mutual Reserve Ass'n v. Zeran,* 152 Wash. 342, 351, 277 P. 984 (1929); *Rothchild Bros. v. Mahoney,* 51 Wash. 633, 635, 99 P. 1031 (1909).

[5]One of the defendants, Mr. Stone, did not himself claim his privilege when questioned by the court. Respondent district argues that this omission constitutes waiver. We disagree. Counsel for all the defendants made it clear that all his clients would testify only under protest, reserving their Fifth Amendment rights. This probably constituted adequate reservation of the claim of privilege. *See United States v. Judson,* 322 F.2d 460 (9th Cir. 1963); *Brody v. United States,* 243 F.2d

the major part of the admissible evidence on which their contempt convictions were based.

 RCW 9.23.010 makes "[w]ilful disobedience to the lawful process or mandate of a court" a misdemeanor. The questions put to the defendants were directed at ascertaining precisely whether they had acted in a manner which would place them in violation of this statute. They had a right not to answer. It does not matter that they were not on trial for violation of this section. The Fifth Amendment and article 1, section 9 of our constitution forbid the compulsion of self-incriminatory evidence in any forum, not just a criminal trial where the defendant is called upon to testify. *Murphy v. Waterfront Comm'n,* 378 U.S. 52, 12 L. Ed. 2d 678, 84 S. Ct. 1594 (1964); *State v. Carroll,* 83 Wn.2d 109, 515 P.2d 1299 (1973); *State v. James,* 36 Wn.2d 882, 221 P.2d 482 (1950), *cert. denied,* 341 U.S. 911 (1951). Compelling a person to give evidence tending to subject him to punishment for criminal contempt is plainly constitutionally impermissible. *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 448, 55 L. Ed. 797, 31 S. Ct. 492 (1911); *State ex rel. Dailey v. Dailey,* 164 Wash. 140, 2 P.2d 79 (1931); 8 J. Wigmore, *Evidence* § 2257(c) (McNaughton rev. 1961). Apart from appellants' testimony the only support for their convictions was hearsay and photographic evidence of doubtful admissibility and scant probative value. In such circumstances it clearly cannot be said that the admission of these direct admissions of noncompliance was "harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967). Their contempt convictions must therefore be reversed.

---

378 (1st Cir. 1957), *cert. denied,* 354 U.S. 923 (1957); 8 J. Wigmore, *Evidence* § 2270 (McNaughton rev. 1961); C. McCormick, *Evidence* § 120 (2d ed. 1972). Even if it did not, in view of the fact that Mr. Stone was present when identical claims by his codefendants were overruled, it cannot be said that any waiver implicit in his answering questions put to him was adequately knowing and intelligent. *Brady v. United States,* 397 U.S. 742, 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1970); *cf. Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966); *State v. Tetzlaff,* 75 Wn.2d 649, 453 P.2d 638 (1969).

■ This determination does not affect, however, the fine levied against the Mead Education Association. It has no standing to assert the rights of its officers or claim error from the admission of evidence in violation of their Fifth Amendment rights. *State v. Dickens*, 66 Wn.2d 58, 401 P.2d 321 (1965). And, of course, the association has no self-incrimination privilege of its own. *Curcio v. United States*, 354 U.S. 118, 1 L. Ed. 2d 1225, 77 S. Ct. 1145 (1957); *State v. Mecca Twin Theater*, 82 Wn.2d 87, 507 P.2d 1165 (1973).

The association therefore does not rest on any claim of violated privilege. Instead, it falls back on the argument that the ultimate settlement of the underlying dispute between itself and the district terminated the lawsuit and vacated the contempt sentences imposed therein, under the rule of *State ex rel. Kerl v. Hofer*, 4 Wn. App. 559, 482 P.2d 806 (1971). This position misconceives the nature of the contempt proceedings brought against the association and its officers, and the holding of *Kerl*.

■ Had the trial court's purpose in fining and jailing these defendants been remedial, to compel them to perform a duty owed the plaintiff or comply with an order otherwise entered for plaintiff's benefit, the case would fall within the rationale of *Kerl* and of *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 55 L. Ed. 797, 31 S. Ct. 492 (1911), upon which *Kerl* relied. But the punishment imposed by the trial court was absolute: the contemnors were not penalized pending compliance, not sentenced conditionally under order to make plaintiff whole; they were simply sentenced. The trial court's desire was not to force adherence to its present order through duress, but to bolster respect for its future orders by attaching a deterrent sanction to violation. This interest was totally independent of any concern of these parties, and it did not end with the settlement of their dispute. It survives, and so, then, does the sentence imposed to further it. *Porter v. Merhar*, 160 F.2d 397 (6th Cir. 1947); *Parker v. United States*, 153 F.2d 66 (1st Cir. 1946); *Alred v. Celanese Corp. of America*, 205

Ga. 371, 54 S.E.2d 240 (1949), *cert. denied*, 338 U.S. 937 (1950); *Joyce v. Hickey*, 337 Mass. 118, 147 N.E.2d 187 (1958).

■ Finally, the association argues that the amount of fine levied against it ($1,000) was excessive under RCW 7.20.020, which provides that when a contemptuous act

is not of those mentioned in RCW 7.20.010(1) and (2), it must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby, before the contempt can be punished otherwise than by a fine not exceeding one hundred dollars.

This case does not fall within the listed subsections and the trial court did not find as a matter of fact that rights or remedies of the district had been "defeated or prejudiced" by the association's action. The trial court failed to specify which contempt authority it was acting under, indicating instead that it was at all times using its general statutory and "inherent" powers. The court has inherent power to punish for contempt and the legislature may not destroy this power. *In re Koome*, 82 Wn.2d 816, 514 P.2d 520 (1973); *Deskins v. Waldt*, 81 Wn.2d 1, 499 P.2d 206 (1972); *State v. Caffrey*, 70 Wn.2d 120, 422 P.2d 307 (1966); *Keller v. Keller*, 52 Wn.2d 84, 323 P.2d 231 (1958); *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 63 P.2d 397 (1936). The legislature, however, may regulate that power as long as it does not diminish it so as to render it ineffectual. *Carter v. Commonwealth*, 96 Va. 791, 32 S.E. 780 (1899).

The trial court did not find, and respondent does not argue, that the $100 limitation of RCW 7.20.020 would impair the court's contempt power in this case. In the absence of such a finding it was not necessary for the court to resort to its inherent, rather than statutory, contempt authority. The proceedings below were, in all particulars except the severity of the sentences imposed, consistent with the requirements of RCW 7.20. In such circumstances, to allow trial courts to choose to deviate from the statutory scheme and revert to inherent power in a single aspect of a case

would effectively nullify the statutes. Unless the legislatively prescribed procedures and remedies are specifically found inadequate, courts should adhere to them and are not free to create their own. *State ex rel. Curtiss v. Erickson,* 66 Wash. 639, 642, 120 P. 104 (1912); *State ex rel. Dye v. Reilly,* 40 Wash. 217, 220, 82 P. 287 (1905). The judgment is therefore modified to reduce the fine levied against the association to $100.

The trial court's decision is, for the above reasons, reversed with regard to the individual appellants and affirmed as modified with regard to the Mead Education Association.

STAFFORD, C.J., and HAMILTON, WRIGHT, and BRACHTENBACH, JJ., concur.

FINLEY, J. (concurring in part; dissenting in part)—I concur in the majority opinion with respect to the reversal of the contempt convictions on self-incrimination grounds. This reversal involves only the individuals and not the Mead Education Association. However, I must dissent from the majority's analysis of the impact that the voiding of an injunction has upon a conviction of contempt for violating that injunction. I do not believe the majority has correctly applied existing law to this question, but more fundamentally, I am concerned with what the law on the subject of contempt *should be* rather than what it is.

The school district sought and obtained a superior court order enjoining the Mead Education Association and school district employees from striking. Subsequently, the superior court determined that the injunction had been violated and, therefore, found the Mead Education Association and certain employees in contempt for violation of the injunction. Thereafter, the injunction was found to be invalid in *Mead School Dist. v. Mead Educ. Ass'n,* 85 Wn.2d 140, 530 P.2d 302 (1975). The association and the employees are here in this court questioning the validity of the order of contempt.

The majority states that, under existing law, if a court lacks subject matter jurisdiction or jurisdiction over the parties, a party cannot be held in contempt for failure to obey an injunction issued by such court. The majority concedes that in *Mead School Dist.* we held that the superior court *lacked jurisdiction over the parties* for failure of the plaintiff to follow the mandates of the Open Public Meetings Act of 1971. It follows that, under existing law, the injunction was void and incapable of supporting a contempt conviction. *See, e.g., Pearce v. Pearce,* 37 Wn.2d 918, 226 P.2d 895 (1951); *State ex. rel. Evans v. Winder,* 14 Wash. 114, 44 P. 125 (1896); *State ex rel. Boardman v. Ball,* 5 Wash. 387, 31 P. 975 (1892).

The majority has attempted to distinguish the instant case from the above decisions and to thereby narrow the instances in which it is justifiable to refuse to abide by an illegal injunction granted without jurisdiction. Thus, it seems to me the majority is forging new law in this jurisdiction and its direction is precisely the opposite of what it *should be.*

Aside from the question of jurisdiction discussed above, I am convinced that a contempt order should have no higher or greater validity than the injunction upon which it is based. When an injunction is voided or subsequently determined to be erroneous by a decision of this court, as the old saying goes "the tail should follow the dog" and a contempt order should accordingly be set aside.

I fully understand the traditional philosophical and legal underpinnings of the majority's general approach, *viz.,* a contempt order relates back to the time the injunction was in full force and effect and should have a legal existence independent of and beyond a subsequent setting aside of the underlying injunction. Central to this reasoning is the consideration that a violation of an injunction is an affront inimical to or subversive of the dignity of the court and that a violation of the injunction should accordingly be punished by contempt and, in the instant case, a fine. I

think this is misplaced emphasis regarding the dignity of the court, and it seems relevant to ask why the courts should harbor grudges in this manner in such cases. By the laws of nature, water cannot rise above its source. The contempt power, if not for reasons of natural law, at least for commonsensical reasons should not be elevated to a higher order of things simply as a dubious prophylaxis for a dubious affront to the dignity of the court. Since the injunction has been set aside and is of no effect, any contempt orders based upon it should also be set aside and given no legal effect, the so-called dignity of the court and any weight of authority to the contrary notwithstanding.

ROSELLINI and HUNTER, JJ., concur with FINLEY, J.

Petition for rehearing denied July 9, 1975.