# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| TIMBERLAND BANK, a Washington corporation, | No.  50207-1-II |
| Respondent, | |
| v. | |
| SHAWN A. MESAROS and JANE DOE MESAROS, individually, and the marital community they comprise, THE STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES: and Also all other persons or parties unknown claiming any right, title, estate, lien, or interest in the real estate describe in the complaint herein, | UNPUBLISHED OPINION |
| Appellants. | |

SUTTON, J. — Shawn A. Mesaros appeals from a trial court's charging order requiring him to provide documentation from his limited liability company (LLC) to Timberland Bank, restraining him from taking any corporate action on behalf of the LLC, foreclosing his LLC interest, and ordering a sheriff's sale of his LLC interest to satisfy a judgment.  Mesaros does not challenge the portion of the charging order foreclosing on his LLC interest or ordering the sheriff's sale.  Nor does he challenge the subsequent foreclosure sale.  Instead, he argues that the charging order contravened RCW 25.15.251 and .256 by (1) requiring him to provide the LLC's records and (2) restraining him from managing and operating the LLC.  Mesaros also argues that because of this error, we should reverse the contempt orders that the trial court issued after he failed to

comply with the challenged portions of the charging order. We hold that this appeal is moot and dismiss this appeal.

FACTS

I. CHARGING ORDER

After Timberland Bank obtained a judgment against Mesaros, Timberland Bank foreclosed on real property owned by Mesaros.[1] On January 17, 2017, Timberland Bank moved under RCW 25.15.256 for an order charging Mesaros's transferrable interest[2] in Pamria, LLC with payment of the still unsatisfied portion of the judgment.[3] Mesaros was the sole "owner" of Pamria. Clerk's Papers (CP) at 31.

---

[1] Timberland Bank obtained a judgment and a decree of foreclosure against real property owned by Mesaros. There is nothing in the record suggesting the real property had any relationship to Mesaros's LLC.

In December 2017, in a separate appeal, we held that the sheriff's sale of Mesaros's real property was void because the sale was held and the execution was returned outside the authorized statutory period. *Timberland Bank v. Mesaros*, 1 Wn. App. 2d 602, 603, 406 P.3d 719 (2017). We set aside the sale and reversed and remanded the matter for further proceedings. *Timberland Bank*, 1 Wn. App. 2d at 603.

The parties have not addressed the effect of this reversal on the matters at issue in this appeal. Because the parties have not briefed the effect of the reversal of the foreclosure sale of Mesaros's real property, we do not address it.

[2] "'Transferable interest' means a member's or transferee's right to receive distributions of the limited liability company's assets." RCW 25.15.006(19). A "[d]istribution" is "a transfer of money or other property from [an LLC] to a member in the member's capacity as a member or to a transferee on account of a transferable interested owned by the transferee." RCW 25.15.006(3).

[3] RCW 25.15.256(1) allows for the trial court to issue a charging order. RCW 25.15.256(1) provides, in part,

On application to a court of competent jurisdiction by any judgment creditor of a member or transferee [of an LLC], the court may charge the transferable interest of the judgment debtor with payment of the unsatisfied amount of the judgment with

Concerned that Mesaros would act in bad faith or would attempt to hide the LLC's assets, Timberland Bank also asked the trial court to restrain Mesaros from taking any action on behalf of the LLC, "including transacting any company business or accessing any funds belonging to Pamria, LLC." CP at 22. Additionally, Timberland Bank requested that the trial court order Mesaros to provide copies of the LLC agreement and all corporate minutes. Timberland Bank argued that it needed access to these records to determine whether foreclosure on Mesaros's interest in the LLC would be beneficial.

Mesaros conceded that Timberland Bank was "entitled to a charging order." CP at 26; Verbatim Report of Proceedings (VRP) (Jan. 23, 2017) at 4. But he argued that under RCW 25.15.251(1)(b),[4] Timberland Bank was not entitled to a charging order restraining him from taking action on behalf of the LLC and/or requiring him to provide access to the LLC's records. He asserted that under RCW 25.15.251, the charging order would only entitle Timberland Bank to receive disbursements from the LLC.

---

interest. To the extent so charged, the judgment creditor has only the rights of a transferee.

[4] RCW 25.15.251(1)(b) provides,

A transfer, in whole or in part, of a transferable interest:

. . . .

Does not, as against the members or the limited liability company, entitle the transferee to participate in the management of the limited liability company's activities, to require access to information concerning the limited liability company's transactions except as provided in subsection (5) of this section or in RCW 25.15.136(11), or to obtain access to information to which a member is otherwise entitled pursuant to RCW 25.15.136 or the limited liability company's other records.

Timberland Bank replied that even if the trial court agreed with Mesaros's arguments, the trial court should immediately foreclose on Mesaros's "membership interest" in the LLC under RCW 25.15.256(2).[5] CP at 31. Timberland Bank argued that because Mesaros was the sole owner of the LLC and his interest in the LLC was less than the amount of the judgment entered in this case, that 100 percent of his interest should be transferred under RCW 25.15.256. Timberland Bank further asserted that once 100 percent of his transferable interest in the LLC was transferred, Mesaros was "dissociated pursuant to RCW 25.15.131(1)(b)"[6] and could not participate in the management of the LLC. CP at 32. Timberland also asserted that because Mesaros had not produced the documents needed to evaluate whether the LLC agreement modified RCW 25.15.131(1)(b) and because Mesaros had engaged in other forms of intransigence, the trial court must order production of the records that Timberland Bank had requested.

On January 23, the trial court issued a charging order that (1) granted Timberland Bank's motion for a charging order charging Mesaros's LLC interest, (2) required Mesaros to "provide true copies of all corporate records requested in the motion to [Timberland Bank] within 10 days of this order," (3) restrained Mesaros "from taking any corporate action on behalf of [the LLC], including accessing any funds belonging to the LLC," (4) foreclosed Mesaros's interest in the

---

[5] RCW 25.15.256(2) provides: "A charging order constitutes a lien on the judgment debtor's transferable interest. *The court may order a foreclosure upon the transferable interest subject to the charging order at any time*. The purchaser at the foreclosure sale has the rights of a transferee." (Emphasis added).

[6] RCW 25.15.131(1)(b) provides: "A person is dissociated as a member of a limited liability company upon . . . [t]he transfer of all of the member's transferable interest in the [LLC]." "When a person is disassociated as a member of [an LLC]: The person's right to participate as a member in the management and conduct of the [LLC's] activities terminates." RCW 25.15.131(3)(a).

LLC, and (5) ordered the Grays Harbor County Sheriff "to sell the interest of . . . Mesaros pursuant to RCW 6.21 *et seq.*" CP at 52-53. Mesaros filed a timely notice of appeal.[7]

## II. CONTEMPT ORDERS

Eighteen days after the trial court entered the charging order, Timberland Bank filed a motion for an order to show cause why Mesaros should not be found in contempt. Timberland Bank asserted that Mesaros had not provided the records that he had been directed to provide and that Mesaros had "attempted to negotiate a check that was payable to [the] LLC," in violation of the restrictions contained in the January 23 order. CP at 34.

On February 21, the trial court issued an order finding Mesaros in contempt of the January 23 order. The contempt order provided that Mesaros could purge the contempt if he produced the required documents, reversed "all corporate activities taken by [the LLC] authorized or initiated by" Mesaros, provided the original check to Timberland Bank, and paid attorney fees and costs.

On March 6, the trial court reviewed the February 21 contempt order. Mesaros's counsel admitted that Mesaros had not complied with the trial court's January 23 order and requested that the trial court stay enforcement of the contempt order pending the resolution of the appeal of the charging order. Timberland Bank responded that there was no authority to stay enforcement of the contempt proceeding or the contempt order until the resolution of the appeal of the charging order.

Apparently rejecting Mesaros's request for a stay, the trial court determined that Mesaros had not purged the contempt and found that Mesaros remained in contempt. The trial court

---

[7] In this notice of appeal, Mesaros designated and attached only the January 23 charging order.

imposed additional sanctions of $1,000 a day for each day the contempt continued.[8]  Mesaros did not appeal from either contempt order or amend his existing notice of appeal challenging the January 23 charging order to include the contempt orders.

In July 2017, Mesaros's interest in the LLC was sold to a party not involved in this litigation.  Mesaros has not appealed this sale.

ANALYSIS

Mesaros challenges the portions of the January 23 charging order that (1) prohibited him from participating in the management of the LLC and (2) required him to provide Timberland Bank with the LLC records the bank requested.  He argues that these portions of the January 23 charging order exceeded the trial court's authority under RCW 25.15.256[9] and violated RCW

---

[8] Mesaros did not appeal from either contempt order.  Thus, to the extent his arguments could be construed as independent challenges to these orders, those arguments are not properly before us. RAP 2.4(a), (b), (c).

Nothing in the record shows whether Mesaros is still incurring the daily sanctions or whether he has complied with any of the requirements for purging the contempt.

[9] RCW 25.15.256 provides in part:

(1) On application to a court of competent jurisdiction by any judgment creditor of a member or transferee, the court may charge the transferable interest of the judgment debtor with payment of the unsatisfied amount of the judgment with interest.  To the extent so charged, the judgment creditor has only the rights of a transferee.  The court may appoint a receiver of the share of the distributions due or to become due to the judgment creditor in respect of the limited liability company and make all other orders, directions, accounts, and inquiries the judgment debtor might have made or that the circumstances of the case may require to give effect to the charging order.

(2) A charging order constitutes a lien on the judgment debtor's transferable interest.  The court may order a foreclosure upon the transferable interest subject to the charging order at any time.  The purchaser at the foreclosure sale has the rights of a transferee.

No. 50207-1-II

25.15.251.[10] Mesaros does not challenge the portions of the trial court's order foreclosing his interest in the LLC and ordering the Grays Harbor County Sheriff to sell Mesaros's interest in the LLC. Nor does he challenge the resulting foreclosure sale.

---

. . . .

(5) This section provides the exclusive remedy by which a judgment creditor of a member or transferee may satisfy a judgment out of the judgment debtor's transferable interest.

[10] RCW 25.15.251 provides:

(1) A transfer, in whole or in part, of a transferable interest:

(a) Is permissible; and

(b) Does not, as against the members or the limited liability company, entitle the transferee to participate in the management of the limited liability company's activities, to require access to information concerning the limited liability company's transactions except as provided in subsection (5) of this section or in RCW 25.15.136(11), or to obtain access to information to which a member is otherwise entitled pursuant to RCW 25.15.136 or the limited liability company's other records.

(2) A transfer of a transferable interest entitles the transferee to receive distributions to which the transferor would otherwise be entitled, to the extent transferred.

(3) Upon transfer of less than the transferor's entire transferable interest in the limited liability company, the transferor retains the rights, duties, and obligations of the transferor immediately prior to the transfer other than the transferable interest transferred.

(4) Except as otherwise provided in (b) of this subsection, a transferee that becomes a member with respect to a transferable interest is liable for the transferor's obligations with respect to the transferable interest. Except to the extent such liabilities are assumed by agreement:

(a) Until a transferee of a transferable interest becomes a member with respect to the transferable interest, the transferee has no liability as a member solely as a result of the transfer; and

(b) A transferee is not obligated for liabilities associated with a transferable interest that are unknown to the transferee at the time the transferee becomes a member.

7

No. 50207-1-II

Timberland Bank argues that (1) this appeal is moot because the LLC has been sold and Mesaros no longer has any interest in the LLC and (2) even if the appeal is not moot, the trial court acted within its authority. We agree with Timberland Bank that this appeal is moot.

Generally, we do not address issues that are moot. *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012). Issues are moot if we cannot provide any effective relief. *Hunley*, 175 Wn.2d at 907. Mesaros has not shown that we can provide any effective relief.[11]

_____

(5) In a dissolution and winding up, a transferee is entitled to an account of the limited liability company's transactions only from the date of dissolution.

(6) For the purposes of this chapter:

(a) The pledge of, or granting of a security interest, lien, or other encumbrance in or against, any or all of a transferable interest is not a transfer of the transferable interest, but a foreclosure or execution sale or exercise of similar rights with respect to any or all of transferable interest is a transfer of the transferable interest to the transferee pursuant to such foreclosure or execution sale or exercise of similar rights.

(b) Where a transferable interest is held in a trust or estate, or is held by a trustee, personal representative, or other fiduciary, the transfer of the transferable interest, whether to a beneficiary of the trust or estate or otherwise, is a transfer of such transferable interest, but the mere substitution or replacement of the trustee, personal representative, or other fiduciary does not constitute a transfer of such transferable interest.

[11] Mesaros does not argue that this appeal addresses any issues of continuing and substantial public interest. *See* Reply Br. at 3; *Hunley*, 175 Wn.2d at 907 (we may retain and decide an otherwise moot appeal if it involves matters of continuing and substantial public interest).

8

Mesaros argues that this case is not moot because reversal of the charging order would restore him to the position he was before the charging order was issued and he could "challenge any entity that improperly claims it owns more than Mesaros'[s] transferable interest in [the LLC]." Reply Br. at 3. We disagree.

RCW 25.15.131(1)(b) provides that a member of an LLC is dissociated from the LLC upon "[t]he transfer of all of the member's transferable interest in the [LLC]." "When a person is dissociated as a member of [an LLC]," that "person's right to participate as a member in the management and conduct of the [LLC's] activities terminates." RCW 25.15.131(3)(a).

Mesaros does not argue that the trial court erred in entering the charging order and ordering the foreclosure. Nor has he appealed from the foreclosure sale of his transferrable interest in the LLC. Thus, the sale of all of Mesaros's transferrable interest dissociated him from the LLC, and he no longer has the right to participate in the management and conduct of the LLC's activities.[12] RCW 25.15.131(1)(b), (3)(a). So, even assuming without deciding that the trial court could not have restricted Mesaros's management of the LLC activities prior to the sale, restoration of his management rights would no longer have any effect because of the foreclosure of all of his transferrable interest in the LLC and his resulting dissociation. As to the production of records, Mesaros does not explain why the issue of whether Timberland Bank could have access to certain

---

[12] To the extent Mesaros may also be asserting that he had the right to manage the LLC as a manager of a manager-managed LLC, rather than as a member of the LLC, this claim goes beyond the record on appeal. There is no documentation in the record showing whether the LLC was a member-managed or a manager-managed LLC or that Mesaros was designated as the manager of the LLC. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) (the court will not review matters outside of the trial record on direct appeal).

9

LLC records to determine if foreclosure was a viable option is not moot now that Mesaros's transferrable interests have been sold.

Mesaros also argues that reversal of the charging order would "provide a basis for [him] to move to purge any contempt finding by the trial court." Reply Br. at 3. But Mesaros does not explain how he would be able to purge the contempt even if this appeal were successful.[13]

At best, Mesaros asserts that if his arguments are successful, we should vacate the contempt orders that arose out of the charging order. But he cites to no authority requiring us to vacate a contempt order if the underlying order is later found to be improper. In fact, as Timberland Bank recognizes, the law is otherwise. As long as the trial court had jurisdiction over the parties and the subject matter, and it did not lack the inherent power to make the order involved, "'a party refusing to obey [the trial court's order], however erroneously made, is liable for contempt.'" *Mead Sch. Dist. No. 354 v. Mead Ed. Ass'n*, 85 Wn.2d 278, 534 P.2d 561 (1975) (quoting *Dike v. Dike*, 75 Wn.2d 1, 8, 448 P.2d 490 (1968)). Mesaros does not contend that the trial court lacked jurisdiction over the parties or the subject matter, or that the trial court lacked the inherent power to issue the contempt order.

---

[13] Again, we note that Mesaros has not appealed the contempt orders.

No. 50207-1-II

Accordingly, we dismiss this appeal as moot.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, A.C.J.

WORSWICK, J.