[Nos. 41990, 41993.　En Banc.　July 13, 1972.]

EMIL DESKINS, *Petitioner*, v. LAWRENCE G. WALDT, *Respondent*.

HENRY KUSH, *Petitioner*, v. LAWRENCE G. WALDT, *Respondent*.

*Robert S. Bryan*, for petitioner.

*Christopher T. Bayley, Prosecuting Attorney*, and *John B. Merritt, Special Deputy*, for respondent.

WRIGHT, J.—This is an application for a writ of habeas corpus. The relators were witnesses before the King County grand jury. Initially, they separately petitioned for

writs, later the applications were consolidated. Both petitioners were represented by the same attorney, who stated in his motion for consolidation that the cases presented identical problems.

Relators refused to answer any questions before the grand jury and presented a lengthy written statement of reasons for such refusal. No useful purpose would be served by quoting at length from the written statement. Thereafter, relators were brought before the Honorable Stanley C. Soderland, one of the judges of the Superior Court of the State of Washington in and for the County of King. Judge Soderland was in charge of the grand jury proceedings and after May 10, 1971, he was designated as "special inquiry judge" according to the provisions of chapter 67, section 2(7) and section 5, Laws of 1971, 1st Ex. Ses., which became effective May 10, 1971.

Judge Soderland inquired of each relator if he would answer. Each of the relators separately refused to testify before the grand jury. Thereupon the following orders were made at once. Emil Deskins was directed to be held in jail by an oral order on May 11, 1971 and was placed in the county jail on that date. Henry Kush was directed to be held in the county jail by an oral order on May 17, 1971, and was placed in the jail on that date.

Except for a few days difference in the time of the proceedings involving Kush and Deskins, the matters took substantially the same course.

Relators emphasize that section 13 of the above-mentioned 1971 act provides: "He may nevertheless be prosecuted for failing to comply with the order . . ." It is the position of relators this language provides for an exclusive remedy, and they may be punished only by a criminal prosecution in the usual form. We do not agree with that contention.

Without deciding whether or not section 13 should be construed as contended by relators, we hold it is within the inherent power of the court to punish for contempt. If the legislature attempted to thus abolish or

abridge the power of the courts, such an attempt would be unconstitutional and void. *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 63 P.2d 397 (1936). In that case, we said at page 415:

Any legislation, therefore, the purpose or effect of which is to divest, in whole or in part, a constitutional court of its constitutional powers, is void as being an encroachment by the legislative department upon the judicial department.

At page 423 we went on to say:

The power of a court, created by the constitution, to punish for contempt for disobedience of its mandates, is inherent. The power comes into being upon the very creation of such a court and remains with it as long as the court exists. Without such power, the court could ill exercise any other power, for it would then be nothing more than a mere advisory body.

Further, at page 424, we stated:

The power to punish for contempt of court being essential to the efficient action of the court and the proper administration of justice, it is lodged permanently with that department of government, and the legislature may not, by its enactments, deprive the court of that power or curtail its exercise.

Upon the authority of *Blanchard* and the numerous cases cited therein, we hold the power of a constitutional court of general jurisdiction to punish for contempt is an inherent power of the court which cannot be taken away or abridged by any act of the legislature.

Relators also contend that the order is defective in that it does not show evidence was taken nor findings of fact entered. The orders entered appear to fully comply with RCW 7.20.030 in that facts occurring in the immediate view and presence of the court are recited, there is a determination that each of the relators is thereby guilty of contempt, and that each of them be punished as specified in the order. Closely related is the contention the order is defective because it did not specify the relators should be released upon the dismissal of the grand jury. Such a limi-

4

tation may be fairly inferred from the language of the order. In any event, relators did not allege they were held after the dismissal of the grand jury, and, therefore, no justiciable question was presented.

Relators also complain no finding was made that the order was in the public interest; that is not required by section 13 of the 1971 act, the converse is the requirement. The act actually states the order shall be entered unless the court "finds that to do so would be clearly contrary to the public interest." We have carefully examined this contention and do not find merit therein.

Relators also contend that the repeal provisions of the 1971 act repealed all prior statute law on the subject of grand juries, and hence, the grand jury then in session ceased to exist when the Governor signed the 1971 act. We do not need at this time to decide whether such a contention has merit, and we express no opinion thereon.

The petitioners herein were ordered to answer by the Honorable Stanley C. Soderland, one of the judges of the Superior Court of the State of Washington, who had been designated to be in charge of the grand jury. No contention is made otherwise than that Judge Soderland was a regularly elected and qualified judge acting within his jurisdiction in an official capacity. The court was one of general jurisdiction.

The rule is well stated in 17 Am. Jur. 2d *Contempt* § 47, wherein it is said:

The rule that an order of the court having jurisdiction over the parties and the subject matter, and having the power to render the particular judgment, though erroneous, may not be disregarded without incurring punishment for contempt of court, applies to oral orders, commands, and directions of the court, such as its rulings on the admissibility of evidence. The fact that a witness may disagree with the court on the propriety of its ruling is no excuse for his not complying with it.

The procedure used herein was the same as the procedure generally recognized as correct in case of a refusal to answer. It is said in 17 Am. Jur. 2d *Contempt* § 30:

Although it is frequently stated that an unjustified refusal to testify before a grand jury may constitute contempt, it seems that mere refusal to answer questions before a grand jury does not constitute contempt and that a person is entitled to persist in his refusal to answer until the court, of which the grand jury is an appendage, orders the witness to answer. . . .

. . .

It appears that witnesses summoned to testify before a grand jury are not concerned with the possible invalidity of the statutes under which the grand jury's investigation is conducted and the consequent want of jurisdiction of court or jury over the subject matter, and that they may not urge that objection to justify their contumacy in refusing to testify.

In Washington the general rule has been followed. In *Dike v. Dike*, 75 Wn.2d 1, 8, 448 P.2d 490 (1968), the court, quoting from *Robertson v. Commonwealth*, 181 Va. 520, 25 S.E.2d 352, 146 A.L.R. 966 (1943), said in part:

Consequently, the authorities are in accord that where the court has jurisdiction of the parties and of the subject matter of the suit and the legal authority to make the order, a party refusing to obey it, however erroneously made, is liable for contempt. Such order, though erroneous, is lawful within the meaning of contempt statutes until it is reversed by an appellate court.

. . .

The same principle applies to the oral orders, commands and directions of the court, such as its rulings on the admissibility of evidence and the production of documents in the possession of a witness in the presence of the court. The fact that a witness may disagree with the court on the propriety of its ruling is, of course, no excuse for his not complying with it. The proper method of challenging the correctness of an adverse ruling is by an appeal and not by disobedience. [Citing cases.]

*Blair v. United States*, 250 U.S. 273, 282, 63 L. Ed. 979, 39 S. Ct. 468 (1919), held a witness is not entitled to object to questions and further stated:

On familiar principles, he is not entitled to challenge

the authority of the court or of the grand jury, provided they have a *de facto* existence and organization.

The grand jury herein had at least a de facto existence. In *Baggot v. Turner*, 21 Wash. 339, 345, 58 P. 212 (1899), we gave several ancient definitions of a de facto officer. One of those definitions is:

"One who actually performs the duties of an office, with apparent right and under claim and color of an appointment or election."

The grand jury had been selected in accordance with the law in force at the time of its selection. Judge Soderland had resworn the grand jury on the morning of May 11, 1971.

Having fully considered the contentions of petitioners, we find no reason to grant a writ of habeas corpus. The order heretofore entered herein is hereby approved and confirmed in all respects and the application for a writ of habeas corpus is hereby denied.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, NEILL, and STAFFORD, JJ., concur.

FINLEY, J. (concurring)—In my judgment the grand jury had a de jure existence. On this basis I concur and have signed the majority opinion.