FILED
COURT OF APPEALS
DIVISION II

2014 JUN 24 AM 9:04

STATE OF WASHINGTON

BY_____
         DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SCOTT KRIEGER, | No. 44014-8-II |
| Appellant, | UNPUBLISHED OPINION |
| v. | |
| PERILYNN KRIEGER, | |
| Respondent. | |

BJORGEN, A.C.J. — Scott Krieger appeals the decision of the Clark County Superior Court finding him in contempt for willfully failing to comply with temporary orders that required him to pay child support and spousal maintenance to his wife, Perilynn, while the couple proceeded with dissolution proceedings.[1] Scott appeals this order and attempts to use the appeal as a springboard to engage in collateral attack of numerous other orders related to the contempt finding. Because we restrict the scope of our review in contempt cases, and because Scott failed to timely appeal the other orders in the manner prescribed by the Rules of Appellate Procedure (RAP), we review only the contempt order itself. We affirm that order, because the trial court did not abuse its discretion in finding Scott in contempt.

### FACTS

Scott and Perilynn married in 1985. The two raised six children, two of whom were still minors in 2011 when Perilynn began proceedings to dissolve the couple's marriage.

---

[1] We refer to members of the Krieger family by their first names for the sake of clarity. We intend no disrespect.

Perilynn moved for temporary orders requiring Scott to pay spousal maintenance, pay child support, divide the couple's liquid assets, and maintain the children's health insurance as part of the couple's separation. Because Scott has repeatedly denied that he could pay the levels of child support and spousal maintenance Perilynn sought, the parties have continually contested Scott's income during these proceedings. Scott is a patent attorney and operates his own practice, which has one major client. During the last few years before Perilynn filed for dissolution, Scott averaged approximately $250,000 a year in after-tax income. Scott has consistently stated that the economic downturn that began in 2008 devastated his major client and that this has led to a dramatic reduction in the amount of work that client referred to him. Scott contended that he had some residual work on patents already filed, but that this work was winding up as well, leaving him with little or no income. Perilynn has consistently maintained that Scott told her he would do whatever necessary to avoid paying her anything if she ever moved to dissolve the marriage and that Scott had begun to carry out his threat by voluntarily reducing his income. Perilynn has also contended, from the start, that Scott was disguising income by funneling work from his major client to his girl friend, who worked as a patent agent.

At the hearing on Perilynn's request for child support and maintenance, the court expressed "skeptic[ism] about [Scott's] claim of reduction" in income. Verbatim Report of Proceedings (VRP) (Dec. 28, 2011) at 18. The court ultimately imputed sufficient income to Scott to satisfy Perilynn's requests for maintenance and child support. Therefore, on January 18, 2012, the court issued two orders. The first, a temporary order of child support, required Scott to pay $2,104 per month in support and to maintain insurance coverage for the children. The second, another temporary order, required Scott to pay $6,896 per month in spousal

maintenance. The court ordered this maintenance to begin effective January 1, 2012, but "[p]rovided, however, [that Scott] shall pay all the expenses of [Perilynn] for the month of December, 2011." Clerk's Papers (CP) at 145. The court also ordered an even split of the couple's liquid assets.

In March 2012, Perilynn moved for an order requiring Scott to show cause why the court should not find him in contempt for violating several provisions of the temporary orders. The violations included failure to pay support obligations, failure to maintain insurance coverage for the children, failure to pay the December 2011 bills, and failure to divide the liquid assets. Scott managed to pay Perilynn some of the late obligations and divide the liquid assets before the show cause hearing. At the hearing, Scott claimed that he was not in contempt because Perilynn had improperly sought double payment for the December 2011 bills and that he was current, or possibly ahead, on his obligations.

The court found Scott in contempt for violations of the temporary orders. Though the court found that Scott had shown an unwillingness to comply with the court's orders, it also found that he had purged "most" of this contempt by the time of the hearing by paying some late obligations. VRP (Mar. 21, 2012) at 36 The court therefore ordered Scott to pay delinquent obligations and attorney fees to Perilynn. Because of Scott's concerns about double payment for the December 2011 bills, the trial court made the amounts that the order required him to pay subject to a "[p]roper [m]otion for [r]econsideration" to reexamine the issue. VRP (Mar. 21, 2012) at 44-45.

Scott filed the motion for reconsideration the court had invited in April 2012. As a result, the court ordered credits toward Scott's overdue payments because of bills he had paid for

3

Perilynn or the marital community. Scott moved for revision of this order, seeking additional credits; the superior court did grant him some credit toward his obligations but otherwise denied his motion.

In June 2012, Scott moved for modification of his obligations to Perilynn. Scott again argued that the economic downturn had reduced his income far below that needed to pay the child support and spousal maintenance required by the temporary orders entered in January and claimed that he had exhausted his cash reserves paying his obligations. Perilynn again contended that Scott was reducing his income by funneling work from his major client to his girl friend and then doing the work for her. The court denied Scott's request for modification.

Scott failed to pay child support or maintenance in July. Perilynn again moved for an order requiring Scott to show cause why the court should not find him in contempt. Scott argued he simply could not pay his obligations and was therefore not in contempt. The court found that Scott's failure to pay anything toward his child support and spousal maintenance obligations showed contempt for the court's orders and ordered Scott to pay the arrearages and Perilynn's attorney fees. The court refused to credit Scott's claims of reduced income, again accepting Perilynn's argument that Scott had voluntarily allowed his "business income [to] conveniently" drop "between the time the support was set" and when he claimed that he could not pay his obligations. VRP (Aug. 22, 2012) at 7. When Scott protested that he had not intentionally lost income, the court told him his claims were "suspect" and that, because the motion before the court concerned only the contempt issue, it would "find contempt." VRP (Aug. 22, 2012) at 8.

On September 28, 2012, Scott filed a notice of appeal with our court. With this notice, Scott sought review of the Order on Show Cause re: Contempt/Judgment filed on August 29,

No. 44014-8-II

2012. The notice of appeal did not seek review of the temporary child support order, the temporary order requiring spousal maintenance, the order denying his proposed modification to the temporary orders for child support and maintenance, or the first contempt order.

ANALYSIS

Scott, through his six assignments of error, appeals the temporary order for child support, the temporary order requiring spousal maintenance, the denial of his motion for modification, and both contempt orders. As discussed below, only the challenge to the August 2012 contempt order is properly before us. We affirm that order and decline to reach the merits of Scott's other claims.

I. SCOPE OF REVIEW

Scott's notice of appeal only sought review of the August 2012 contempt order. His briefing, however, assigns error to portions of several other orders, each of which the superior court entered more than 30 days before Scott filed his notice of appeal. Perilynn argues that Scott cannot make an untimely collateral attack of these orders through his appeal of the August contempt order. Perilynn is correct.

Under Washington's collateral bar rule, "a court order cannot be collaterally attacked in contempt proceedings arising from its violation, since a contempt judgment will normally stand even if the order violated was erroneous or was later ruled invalid." *State v. Coe*, 101 Wn.2d 364, 369-70, 679 P.2d 353 (1984); *City of Seattle v. May*, 171 Wn.2d 847, 852, 256 P.3d 1161 (2011). The collateral bar rule "recognize[s] that flaws which do not go to the heart of the judicial power are insufficient to justify the flaunting of an otherwise lawful order." *Mead Sch. Dist. No. 354 v. Mead Educ. Ass'n*, 85 Wn.2d 278, 284, 534 P.2d 561 (1975). A party's remedy

5

for an erroneous order or decision is to appeal it, not to disregard it contemptuously. *Deskins v. Waldt*, 81 Wn.2d 1, 5, 499 P.2d 206 (1972) (citing *Dike v. Dike*, 75 Wn.2d 1, 8, 448 P.2d 490 (1968))..

The RAPs govern the procedures a party must comply with to appeal a decision or order the party believes is erroneous. RAP 1.1(a). RAP 5.2(a) and (b) govern the time allowed to file either a notice of appeal or of discretionary review. In each case, barring exceptions not relevant here, a party must file the notice within 30 days of the trial court act of decision the party seeks to have reviewed. RAP 5.2. Further, RAP 2.4(a) governs the scope of our review, and it limits our review to the "decision" listed in the notice of appeal or discretionary review.

The collateral bar rule prevents us from reviewing Scott's first four assignments of error. With these, Scott contends that the court erred in determining the amount of support he owed and in declining to modify that support. He alleges that these miscalculations resulted in his contempt. These assignments of error are collateral attacks on the merits of the underlying orders through an appeal of a contempt order, and the collateral bar rule specifically forbids these types of attacks. Scott's remedy for any errors the court made in modifying his support obligations was to seek review of the support orders, not to disobey them. We decline to reach the merits of these claims.[2,]

We cannot review Scott's sixth assignment of error as he failed to comply with the relevant provisions of the RAPs. In making this assignment of error, Scott contends that the court lacked the power to enter the March 2012 contempt order without a jury trial because the

---

[2] The court also entered the orders Scott wants reviewed more than 30 days before Scott's notice of appeal and Scott therefore "waived his right to challenge the provisions to which he now objects." *In re J.R.H.*, 83 Wn. App. 613, 616, 922 P.2d 206 (1996).

order was punitive rather than remedial. Scott failed to list the March 2012 contempt order on his notice of appeal, precluding our review under RAP 2.4(a). Further, the court entered the March 2012 order more than 30 days before Scott filed his notice of appeal in September. Consequently, he waived review of the order under RAP 5.2. *In re J.R.H.*, 83 Wn. App. at 616. We decline to reach the merits of this claim as well.

In *J.R.H.*, Division One of our court refused to reach a contemnor's challenges to several underlying orders based on a straightforward application of the collateral bar rule and RAP 5.2. 83 Wn. App. at 616-18. We follow this precedent. Scott failed to timely appeal the underlying orders he now challenges, and he cannot use the appeal of the contempt proceeding to escape the strictures of the RAPs.

## II. THE AUGUST 2012 CONTEMPT ORDER

In his challenge to the August 2012 contempt order, the only assignment of error properly before us, Scott claims that the trial court erred by finding him in contempt without a finding of bad faith. He alleges that he introduced substantial evidence of his inability to comply with the court's child support and maintenance orders, and asks that we reverse the contempt finding.

Contempt is, among other things, "intentional . . . [d]isobedience of any lawful judgment, decree, order, or process of the court." RCW 7.21.010(1)(b). An obligee such as Perilynn may seek to enforce child support or spousal maintenance orders against an obligor, like Scott, through contempt proceedings. RCW 26.18.040, .050. An obligor may defend against contempt proceedings initiated under RCW 26.18.050 by establishing that the failure to comply is unintentional because it results from an inability to comply. RCW 26.18.050(4). By statute, an obligor employing this defense against maintenance or support obligations bears the burden of

proving the inability to comply. RCW 26.18.050(4). This statutory commandment comports with Washington's general law on contempt, which presumes an ability to comply with court orders and views a claim of inability to comply as an affirmative defense carrying both the burden of production and persuasion. *In re Marriage of Rideout*, 150 Wn.2d 337, 352-53, 77 P.3d 1174 (2003) *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995) (quoting *In re Pers. Restraint of King*, 110 Wn.2d 793, 804, 756 P.2d 1303 (1988)). To satisfy these burdens, an obligor must produce "'credible'" evidence of an inability to comply. *Moreman*, 126 Wn.2d at 41 (quoting *King*, 110 Wn.2d at 804).

We review a trial court's exercise of its contempt powers for an abuse of discretion. *In re Marriage of Eklund*, 143 Wn. App. 207, 212, 177 P.3d 189 (2008). A trial court abuses its discretion if it exercises its contempt powers in a manifestly unreasonable way or exercises its power on untenable grounds or for untenable reasons. *First-Citizens Bank & Trust Co. v. Reikow*, 177 Wn. App. 787, 797, 313 P.3d 1208 (2013). Scott asks us to hold that the trial court exercised its discretion for untenable reasons by applying the wrong legal standard and for untenable grounds by ignoring evidence in the record.

Scott first argues that the court exercised its discretion for untenable reasons by finding him in contempt without a finding of bad faith.[3] We reject this argument. As Perilynn notes, the case Scott cites to support his argument that the court needed to find bad faith analyzed another

---

[3] Although the trial court's written findings do not mention bad faith, the trial court's oral ruling did find that he had shown bad faith in refusing to pay even a de minimis amount of his child support obligation. However, we review the trial court's written order as the binding expression of its findings, and we may only use the trial court's oral rulings to interpret any ambiguous written order. *State v. Hescock*, 98 Wn. App. 600, 605-06, 989 P.2d 1251 (1999). The trial court's written order is not ambiguous, and we may not turn to the oral ruling to find an expression of bad faith. *Hescock*, 98 Wn. App. at 606.

provision in chapter 26 RCW, and contempt proceedings under that chapter explicitly required a showing of bad faith. *In re Marriage of James*, 79 Wn. App. 436, 440, 903 P.2d 470 (1995) (quoting RCW 26.09.160(2)(b)). RCW 26.18.050 only requires a showing that an obligor intentionally refused to comply with a court order. The trial court found an intentional refusal to comply. No additional showing of bad faith is required.

Scott also claims the court exercised its discretion on untenable grounds by ignoring the evidence he presented of his inability to pay. Scott did present evidence that his income declined precipitously in 2011 and 2012. However, the court considered this evidence and found it lacked credibility. We defer to a court's credibility determinations in resolving family law disputes, even where, as here, the record before the court consisted of written evidence. *Rideout*, 150 Wn.2d at 349-52. We therefore review the court's determination that Scott had the ability to pay by examining whether it is supported by substantial evidence. *See Rideout*, 150 Wn.2d at 352.

The record contained evidence that Scott had the ability to pay, at the very least, some amount of child support. Scott had a history of earning approximately $250,000 a year until his income dropped steeply after Perilynn initiated dissolution proceedings. Perilynn's declarations indicated that Scott had promised to avoid paying Perilynn any support should she ever attempt to dissolve the marriage. The court could readily conclude from this evidence that Scott had voluntarily sabotaged his business's income in order to avoid paying child support and spousal maintenance. *In re Marriage of Mattson*, 95 Wn. App. 592, 604, 976 P.2d 157 (1999) (affirming a finding of voluntary underemployment where it came "on the heels" of an order of child support). Evidence was also introduced, indicating that Scott had channeled work to his girl friend so that he would be able to maintain his lifestyle while avoiding the appearance of

generating substantial income. The court, if accepting that Scott had deceived it, could impute sufficient income to him to allow him to pay his obligations. *See In re Marriage of Dodd*, 120 Wn. App. 638, 644-46, 86 P.3d 801 (2004). Further, even Scott's own evidence showed he had the power to pay something, even if only a de minimis amount. He refused to do so. Substantial evidence supports the court's finding that Scott willfully refused to comply with the orders for child support and spousal maintenance, and we affirm the contempt order. *Moreman*, 126 Wn.2d at 40-43 (affirming an order of contempt after the trial court refused to credit the defendant's claim he could not comply with a court order).

### III. ATTORNEY FEES

Scott appeared pro se and seeks attorney fees. While we may award attorney fees to an attorney appearing pro se, we will do so only where the self-representation costs the attorney income by taking up time he or she could have otherwise devoted to their practice. *Leen v. Demopolis*, 62 Wn. App. 473, 486-87, 815 P.2d 269 (1991). Scott does not claim that his work on this matter interfered with his practice. Nor does Scott comply with RAP 18.1 by offering authority authorizing an award of fees to him. For these reasons, we deny his request for fees. *See Leen*, 62 Wn. App. at 487; *In re Wash. Builders Benefit Trust*, 173 Wn. App. 34, 87, 293 P.3d 1206, *review denied*, 177 Wn.2d 1018, 304 P.3d 114 (2013).

Perinlynn also seeks attorney fees, making this request under RCW 26.18.160 and RCW 7.21.030(3), both of which authorize an award of fees incurred at trial and on appeal. *Rhinevault v. Rhinevault*, 91 Wn. App. 688, 696, 959 P.2d 687 (1998); *R.A. Hanson Co., Inc. v. Magnuson*, 79 Wn. App. 497, 502-03, 903 P.2d 496 (1995). Perilynn's request complies with the requirements of RAP 18.1, and we award her fees.

10

No. 44014-8-II

## CONCLUSION

We decline to reach five of Scott's six assignments of error because he waived them and the collateral bar rule forbids us from reaching them. We affirm the contempt order because the court did not abuse its discretion in entering it. We deny Scott's request for attorney fees on appeal, and we grant Perilynn's request for attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, A.C.J.

We concur:

MAXA, J.

LEE, J.

11