FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 DEC -4 AM 10: 46

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE CITY OF FERNDALE,<br>a Washington municipal corporation,<br><br>Respondent,<br><br>v.<br><br>ARTUR and MARGARET ROJSZA,<br>a married couple,<br><br>Appellants. | DIVISION ONE<br><br>No. 74863-7-I<br>(consol. with No. 76662-7-I)<br><br>UNPUBLISHED OPINION<br><br><br>FILED: December 4, 2017 |

DWYER, J. — Artur and Margaret Rojsza appeal from the trial court's orders entering a consent judgment, enforcing the consent judgment, and awarding the City of Ferndale attorney fees and costs. Finding no error, we affirm.

I

The Rojszas own a house located in the City of Ferndale, Whatcom County. In 2005, the Rojszas began remodeling their house without a permit. They have been continuously remodeling their house ever since, exceeding the scope of every permit that the City has issued.[1]

---

[1] The house itself displays an array of ever-changing features and most notably includes a large clock tower. The scene is reminiscent of the famous Winchester house in California, which was under construction for nearly 40 years.

As a result of the nonstop construction, the Rojszas and the City of Ferndale have been embroiled in legal disputes for years. We have already dismissed one appeal as premature. Rojsza v. City of Ferndale, No. 69259-3-I, slip op. at 1 (Wash. Ct. App. April 7, 2014) (unpublished), http://www.courts.wa.gov/opinions/pdf/692593.pdf. Following our decision in that case, the City issued a letter revoking the Rojszas' permit based on ongoing violations of the Ferndale Municipal Code, the International Residential Code, a stop work order, and the permit's issuing statements. The City also issued a notice of violation for ongoing nuisance violations on the Rojszas' property.

The Rojszas appealed both the permit revocation and the notice of violation to the city hearing examiner. Prior to the hearing, the Rojszas and the City agreed to mediate the dispute. Mediation resulted in a settlement comprised of two documents: a "memorandum of settlement" and a "[Civil Rule (CR)] 2A settlement addendum" (collectively Settlement).

The Settlement was signed by both parties on February 3, 2015 and provided that a copy of the Settlement may be introduced into evidence in any proceeding to enforce the Settlement pursuant to CR 2A and RCW 2.44.010.[2]

---

[2] Pursuant to CR 2A,

No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

Pursuant to RCW 2.44.010, an attorney has authority:

(1) To bind his or her client in any of the proceedings in an action or special proceeding by his or her agreement duly made, or entered upon the minutes of the court; but the court shall disregard all agreements and stipulations in relation to the conduct of, or any of the proceedings in, an action or special proceeding unless such agreement or stipulation be made in open court, or in

The Settlement required the Rojszas to: submit a full structural review certifying that the existing structure was safe and structurally sound; submit plans reflecting what had already been constructed; and remedy any safety or structural deficiencies within 90 days. The Settlement agreement provided that the building permit would be permanently revoked, without a right to appeal, if the Rojszas failed to remedy any safety or structural deficiencies within 90 days or if the Rojszas exceeded the scope of the permit without City approval and failed to remedy the transgression within 10 days. The Settlement further provided that "[a]ll exterior construction, roofing and siding" must be completed by October 31, 2015 and that the Rojszas "agree that they consent to entry of a judgment/decree/order against them . . . authorizing the court to use any and all available remedies at law or in equity to enforce this deadline."

In conjunction with the Settlement, counsel for the Rojszas also signed a Stipulation for Consent Judgment (Stipulation) and a blank consent judgment that allowed a court to fill in the appropriate remedies for a default. The Stipulation integrated the terms of the Settlement and further provided that, in the event that the Rojszas defaulted on the Settlement:

> 1) The City may make a declaration or affidavit outlining the date of Defendants' default, the date written notice of the same was given, and the circumstances of the default;
> 2) The City is authorized to submit to the above-entitled Court, the above declaration/affidavit, this Stipulation, and a Consent Judgment in the same or substantially similar form as that attached as Exhibit A hereto;
> 3) The City is further authorized to request any and all equitable or legal remedies to address the Rojsza's [sic] default

---

presence of the clerk, and entered in the minutes by him or her, or signed by the party against whom the same is alleged, or his attorney.

and/or to request that the Court order whatever equitable remedy it deems to be fair and just under the circumstances, as a result of the Rojszas' default;

4) The Rojszas agree pursuant to the terms of the Settlement . . . that the Consent Judgment to be entered by the court pursuant to this Stipulation shall be a valid and binding Judgment, enforceable against them jointly and severally, and that no complaint, process, or service of process (other than delivery of the default notice as provided above) is required before a hearing may be held upon entry of the Consent Judgment.

5) The City shall notify the Rojszas and their attorney of the date and time of a hearing to enter the Consent Judgment, along with the grounds alleged for default and the specific remedies sought. The hearing shall be made by motion pursuant to the Civil Rules of Superior Court and the Local Rules of Whatcom County.

The Rojszas thereafter failed to comply with the terms of the Settlement.[3]

On November 25, 2015, the City filed its Proposed Consent Judgment. The Proposed Consent Judgment required the Rojszas to, among other things, pay an initial fine of $10,000, remove all unapproved building materials, cover all exposed areas of the house with approved materials, complete siding, install a permanent roof, remove all windows not shown on the approved plans, submit to inspections, and install a sight-obscuring fence on all sides of the property. The Proposed Consent Judgment also provided that, should the Rojszas fail to perform any of these obligations, the City could permanently revoke the building permit and levy a fine of $1,000 per day against the Rojszas until compliance was achieved.

The trial court entered its order (Consent Judgment) following a hearing on February 12, 2016. The Consent Judgment revised the City's Proposed

---

[3] For example, the Rojszas never completed the siding for the house, deviated from their proposed plans without City approval, failed to screen the yard from the view of the public, failed to submit as-built plans, and continued construction past the deadline for compliance.

- 4 -

Consent Judgment, reserving several of the remedies requested by the City. For example, the trial court reserved the $10,000 fine, reserved ordering the Rojszas to construct a sight-obscuring fence, and reduced the per-day penalty for noncompliance to $200. The Rojszas thereafter filed a notice of appeal with this court.

The Rojszas failed to meet the deadlines set out in the Consent Judgment. Accordingly, the City filed a motion to enforce the Consent Judgment and asked the court to find the Rojszas in contempt of court, assess penalties against them, and award the City attorney fees. The Rojszas responded by asserting that they had completed the required work and that the Consent Judgment went beyond the scope of the Settlement.

The trial court entered its order (Enforcement Order) following a hearing on June 24, 2016. The trial court found that the Rojszas had failed or refused to satisfy the terms of the Consent Judgment and were therefore in contempt of court. The trial court assessed penalties of $106,200, suspended for 60 days and to be vacated if the Rojszas complied with the terms of the Consent Judgment and the Enforcement Order. The trial court again reserved the $10,000 penalty for violating the terms of the Settlement. Finally, the trial court awarded the City attorney fees.

On July 6, 2016, the trial court entered a stipulated addendum to the Enforcement Order, extending certain deadlines. On July 20, 2016, the Rojszas filed an amended notice of appeal to this court, seeking review of the Enforcement Order and the stipulated addendum.

The Rojszas largely failed to comply with the Enforcement Order. Accordingly, on February 10, 2017, the City filed a motion to enforce the Enforcement Order and stipulated addendum and again asked the court to find the Rojszas in contempt of court, assess penalties against them, and award the City attorney fees.

The trial court entered its order (Third Order) following a hearing on March 27, 2017. The trial court ordered the Rojszas to complete all specific terms of the Consent Judgment, barred the Rojszas from requesting additional deviations from the approved plans, and permitted the City to assess per-day fines of $500 for noncompliance after 90 days or revoke the permit. The trial court found that the Rojszas were in contempt of court and fined them $106,200, suspending all but $10,000. The trial court further fined the Rojszas $291,000, suspending all but $15,000. The Third Order stated that a failure to comply within 90 days would entitle the City to request the remaining suspended penalties. On April 14, 2017, the trial court entered judgment in favor of the City and awarded it attorney fees totaling $10,805.30 (Judgment). The Rojszas appealed the Third Order on April 5, 2017 and the Judgment on May 3, 2017.

On July 12, 2017, a court-appointed third party inspector confirmed that the Rojszas had resolved all remaining issues with their house and satisfied the inspection. Accordingly, on July 26, 2017, the parties entered a stipulation and order purging contempt and all suspended penalties. The City confirmed full satisfaction of the judgment entered against the Rojszas with the parties entering

into an agreement for monthly payments on the $25,000 penalties and a $10,805.30 attorney fee award.[4] The Rojszas appeal.[5]

## II

The Rojszas contend that the trial court erred by entering the Consent Judgment and, consequently, erred by entering the orders enforcing the Consent Judgment. This is so, they assert, because (1) the trial court was without authority to enter the Consent Judgment, (2) the Consent Judgment exceeded the scope of the Settlement, and (3) the City was in default of the Consent Judgment and therefore could not enforce the Consent Judgment. Each contention is addressed in turn.

## A

The Rojszas first contend that the trial court lacked authority to enter the Consent Judgment. This is so, they assert, because the City failed to obtain a "judgment by confession" pursuant to chapter 4.60 RCW[6] and because the Settlement could not be enforced pursuant to CR 2A and RCW 2.44.010. They are wrong.

---

[4] Because the Rojszas are under a duty to make payments on the judgment, the case is not moot. City of Sequim v. Malkasian, 157 Wn.2d 251, 259, 138 P.3d 943 (2006). The City errs by claiming otherwise.

[5] The subject of this appeal is the Third Order and Judgment. Both parties recognize that the merits of this appeal are tied to the merits of the first appeal concerning the Consent Judgment and Stipulation.

[6] RCW 4.60.050 authorizes judgments by confession when there is no lawsuit pending. It provides, "A judgment by confession may be entered without action, either for money due or to become due, or to secure any person against contingent liability on behalf of the defendant, or both, in the manner prescribed by this chapter." Pursuant to RCW 4.60.040, "The confession and assent thereto shall be in writing and subscribed by the parties making the same, and acknowledged by each before some officer authorized to take acknowledgments of deeds."

As a preliminary matter, the Rojszas did not raise these arguments at trial and have therefore waived them on appeal. State v. Lazcano, 188 Wn. App. 338, 355, 354 P.3d 233 (2015), review denied, 185 Wn.2d 1008 (2016).

But the Rojszas' contentions also fail on the merits. The parties explicitly contracted to make the Settlement enforceable and to permit the entry of a consent judgment pursuant to CR 2A and RCW 2.44.010. The Rojszas concede that this is true: "The only authority for the trial court to enter the Final Consent Judgment was pursuant to the terms of the Settlement Agreement and the Stipulation for Entry of Consent Judgment." Thus, the Rojszas' contentions regarding the applicability of CR 2A and RCW 2.44.010 are without merit. The Settlement is enforceable by contract, not by operation of law.[7]

## B

The Rojszas next contend that the Consent Judgment exceeded the scope of the Settlement. We disagree.

We review a trial court's decision to enforce a settlement agreement for an abuse of discretion. Morris v. Maks, 69 Wn. App. 865, 868, 850 P.2d 1357 (1993). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. Holbrook v. Weyerhaeuser Co., 118 Wn.2d 306, 315, 822 P.2d 271 (1992).

---

[7] In their reply brief, the Rojszas also assert that the trial court lacked personal jurisdiction to enter the Consent Judgment. But, as discussed herein, the Rojszas contracted to give the trial court personal jurisdiction by signing the CR 2A settlement. The Rojszas agreed that "no complaint, process, or service of process" was required before the court could enter the Consent Judgment. The Rojszas agreed that the Settlement "shall be construed under the laws of the State of Washington" and that the venue of any dispute arising from the terms of the Settlement "shall be Whatcom County Superior Court." The Rojszas' contention is without merit.

Normal contract principles apply to the interpretation of settlement agreements. In re Marriage of Pascale, 173 Wn. App. 836, 841, 295 P.3d 805 (2013). Washington courts "follow the objective manifestation theory of contracts." Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Under this approach, courts focus on the agreement's objective manifestations to ascertain the intent of the parties. Kelley v. Tonda, 198 Wn. App. 303, 311, 393 P.3d 824 (2017).

"The function of the trial court is to ascertain that the parties and counsel understand the stipulation and to implement that agreement." Baird v. Baird, 6 Wn. App. 587, 589-90, 494 P.2d 1387 (1972) (citation omitted). A consent judgment that is properly entered is binding on the parties and will not be disturbed where it is supported by the evidence. Baird, 6 Wn. App. at 590. The consent judgment "excuses all prior errors and operates to end all controversy between the parties, within the scope of the judgment." Wash. Asphalt Co. v. Harold Kaeser Co., 51 Wn.2d 89, 91, 316 P.2d 126 (1957). Absent fraud, mistake, or lack of jurisdiction, a consent judgment will not be reviewed on appeal. Wash. Asphalt, 51 Wn.2d at 91.

The Rojszas contend that the terms of the Consent Judgment exceeded the scope of the Settlement.[8] They assert that the only thing consented to in the Settlement was a limited judgment for the sole purpose of enforcing the exterior construction deadline.

---

[8] Contrary to the City's assertions, in this regard the Rojszas essentially allege mistake.

- 9 -

The Settlement was signed by both parties and was "intended to resolve any and all issues between the parties related to" the building permit, the property, and the nuisance violations. The Settlement contains a list of requirements and deadlines that the Rojszas must meet. In conjunction with the Settlement, the Rojszas also signed the Stipulation. The Stipulation confirmed that the Settlement was intended to resolve "any and all disputes" related to the building permit and nuisance ordinance violations. The Stipulation integrated the terms of the Settlement and further provided that, in the event of default, the City was authorized "to request any and all equitable or legal remedies . . . and/or to request that the Court order whatever equitable remedy it deems to be fair and just under the circumstances." The Rojszas agreed to be bound by the judgment entered by the court. Finally, counsel representing the Rojszas signed a proposed form of consent judgment that allowed the court to fill in the blanks as to the appropriate remedies.

Following the Rojszas' default on the Settlement, the City filed its Proposed Consent Judgment. The City attached declarations, as explicitly provided for by the Stipulation, to demonstrate the nature of the Rojszas' default. The trial court then made changes to the City's Proposed Consent Judgment and entered the Consent Judgment. The Consent Judgment contained the equitable remedies deemed appropriate by the trial court, as explicitly contemplated by the Settlement. Notably, all of the remedies imposed by the trial court relate to completion of the exterior of the home.

Although the Rojszas summarily assert that the Consent Judgment exceeds the scope of the Settlement, they have failed to elaborate further. Rather, they fault the trial court for requiring the use of "specific materials within specific timelines." But the Consent Judgment merely requires the Rojszas to remove unapproved materials from the exterior of their home and complete exterior construction with approved materials as contemplated by the Settlement, building permit, and city code.[9] The terms of the Consent Judgment are in accordance with the Settlement and Stipulation.

By entering into the Settlement and Stipulation, the Rojszas agreed to complete exterior construction on their home in accordance with the building permit, city code, and the deadlines set out in the Settlement. They also agreed to the entry of a judgment against them should they default, authorizing the court to order whatever equitable remedies it deemed necessary.

There was no error.

## C

Finally, the Rojszas contend that the City cannot enforce the Settlement because the City was also in breach.

A breaching party is precluded from enforcing a contract against a nonbreaching party when the party's performance of the breached promise was a

___

[9] For example, the Consent Judgment required the Rojszas to remove all "'mirrors', or mirror-like, or glass materials installed on the exterior of the home that are not shown in the approved Plans." It is disingenuous for the Rojszas to agree to complete exterior construction in accordance with the building permit and city code but then fault the trial court for ordering specific remedies that would bring them into compliance.

condition precedent to the other party's performance. Anderson Hay & Grain Co. v. United Dominion Indus., Inc., 119 Wn. App. 249, 256, 76 P.3d 1205 (2003).

Here, the Settlement provided that the City would review the documents submitted by the Rojszas in 2013 (Spire Permit) as a new permit application, dated 2015. The Settlement provided that the City's "review of the 2015 Permit shall not excuse any obligation to perform" under the Settlement. The City did not issue the Spire Permit until days before the trial court entered the Consent Judgment.

On appeal, the Rojszas contend that the issuance of the Spire Permit was a condition precedent to their performance in completing the exterior construction. The Rojszas assert that, by failing to issue the Spire Permit until after the deadline for construction, the City defaulted on the Settlement and therefore cannot enforce the Settlement against them.

The Rojszas' assertions fail on the plain language of the Settlement. The Settlement explicitly states that the Spire Permit would be reviewed as a new permit application and that the City's review of the Spire Permit "shall not excuse any obligation to perform" under the Settlement. The Settlement does not at all require the City to issue the Spire Permit and certainly does not require the City to review and issue the permit as a condition precedent to the Rojszas' performance.[10]

_____

[10] Although not addressed by the parties, we also note that the Rojszas appealed the trial court's orders without moving for a stay or supersedeas bond.

An order is "lawful" if it issues from a court with jurisdiction over the parties and the subject matter even if that order is erroneous or is subsequently invalidated. State v. Breazeale, 99 Wn. App. 400, 413, 994 P.2d 254 (citing Deskins v. Waldt, 81 Wn.2d 1, 4, 499 P.2d 206 (1972)), aff'd in part, rev'd in part, 144 Wn.2d 829, 31 P.3d 1155 (2001). A party's failure to stay

III

The City requests attorney fees and costs for defending against a frivolous appeal pursuant to RAP 18.9. An appeal is frivolous if there are no debatable issues upon which reasonable minds might differ and it is so devoid of merit that there was no reasonable possibility of reversal. In re Marriage of Penry, 119 Wn. App. 799, 804, 82 P.3d 1231 (2004). Exercising our discretion, we decline to award attorney fees.

Affirmed.

We concur:

---

the judgment or post a supersedeas bond permits enforcement of the judgment by execution, attachment, garnishment, contempt proceedings, or other appropriate forms of process. State v. Ralph Williams' N. W. Chrysler Plymouth, Inc., 87 Wn.2d 327, 331, 553 P.2d 442 (1976) (quoting Ryan v. Plath, 18 Wn.2d 839, 855-56, 140 P.2d 968 (1943)). Contempt of court is the intentional disobedience of any lawful judgment, decree, order, or process of court. RCW 7.21.010(1)(b).

Here, the trial court issued a lawful order that the Rojszas have since complied with. Although the Rojszas appealed the Consent Judgment, they failed to stay the proceedings or post a supersedeas bond. Accordingly, the trial court commenced contempt proceedings to enforce its lawful order. The Rojszas were required to obey the trial court's order regardless of whether it was erroneous. Deskins, 81 Wn.2d at 4-5. Thus, for this reason also, the trial court did not err by entering a contempt order following noncompliance.